THOMAS D. ROTH, CAL. BAR NO. 208601
LAW OFFICES OF THOMAS D. ROTH
ONE MARKET, SPEAR TOWER, SUITE 3600
SAN FRANCISCO, CALIFORNIA 94105
TELEPHONE: (415) 293-7684
FACSIMILE:   (415) 276-2376
Email: rothlaw1@comcast.net

Attorneys for Plaintiffs
FRIENDS OF OCEANO DUNES, INC. and
WILLIAM D. KNOFF, as a member of Friends
and individually

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRIENDS OF OCEANO DUNES, INC., a California not-for-profit corporation and association, and WILLIAM D. KNOFF <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES FISH AND WILDLIFE SERVICE, SALLY JEWELL, in her official capacity as Secretary of the Interior; DANIEL ASHE, in his official capacity as Director, U.S. Fish and Wildlife Service, MICHAEL BRADY, in his official capacity as Guadalupe-Nipomo Dunes National Wildlife Refuge Manager, U.S. DEPARTMENT OF THE INTERIOR, and the GUADALUPE-NIPOMO DUNES NATIONAL WILDLIFE REFUGE <br><br> Defendants. | Case No.: <br><br> **COMPLAINT RE FAILURE TO PREPARE A COMPREHENSIVE CONSERVATION PLAN FOR GUADALUPE-NIPOMO DUNES NATIONAL WILDLIFE REFUGE** |

Plaintiffs, Friends of Oceano Dunes, Inc. (Friends), on behalf of itself and its members, and William D. Knoff, as a member of Friends and individually, allege the following:

## Jurisdiction and Venue

1.   This Court has jurisdiction over this action pursuant to 16 U.S.C. § 668dd et seq. of the National Wildlife Refuge System Administration Act, as amended (Act), 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1346 (action against the United States); 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty); 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief); and 5 U.S.C. §§ 702, 704 and 706 (APA).

2.   An actual, justiciable controversy now exists between Plaintiffs Friends, its members and Mr. Knoff, and Defendants. Relief is proper under 28 U.S.C. § 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

3.   Venue lies in this judicial district under 28 U.S.C. § 1391(e) because, according to the U.S. Fish and Wildlife Service ("FWS") website, "the California and Nevada Operations Office (CNO) *directs the management* of . . . National Wildlife Refuges . . . in California . . . ." (http://www.fws.gov/cno/refuges/Workforceplanning.html)  The CNO is located in Sacramento, California.  A substantial part of the events or omissions giving rise to the claims herein (i.e., the failure of FWS to prepare a Comprehensive Conservation Plan ("CCP") for a National Wildlife Refuge located in California) occurred within this judicial district.  Also, this action is filed against a U.S. government agencies (FWS and the U.S. Department of Interior), which reside and maintain offices in Sacramento, California.

4.  The federal government has waived sovereign immunity for the purposes of this action.

5.  Plaintiff Friends and Plaintiff William Knoff, as a member of Friends and individually, have exhausted all required and applicable administrative remedies, if any, or it would be futile to attempt exhaustion.

**Nature of Action**

6.  This action concerns the FWS' management and operation of the Guadalupe-Nipomo Dunes National Wildlife Refuge (Refuge) located near Guadalupe, California. The Refuge was established more than 15 years ago.  The National Wildlife Refuge System Administration Act (Act), 16 U.S.C. § 668dd et seq, as amended, required the Defendant FWS to prepare and adopt a final CCP for the Refuge within 15 years of the Refuge's establishment on August 1, 2000.  Defendant FWS has failed to prepare and issue a final CCP for the Refuge.  The failure to adopt a final CCP no later than August 1, 2015 violates the Act as well as the Administrative Procedure Act (APA).  Plaintiffs seek review of FWS' failure to comply with the statutory mandate to prepare and issue a final CCP in a timely manner, a declaration that FWS is violating the Act and the APA and an order directing the FWS to comply with its mandatory, nondiscretionary duties immediately. Administrative agencies do not possess the discretion to avoid discharging the duties that Congress commanded them to perform.  Judicial review is needed because the FWS' failure to comply with its statutorily mandated duties has harmed, and continues to harm, Friends, its members and William Knoff, as a member of Friends and individually.

**Parties**

7.  Plaintiff, FRIENDS OF OCEANO DUNES, Inc., (Friends) is a California not-for-profit corporation and watchdog association, representing approximately 28,000 members and users of the Oceano Dunes State Vehicle Recreation Area (SVRA), which is located immediately adjacent to the Refuge.  Friends was formed in 2001 for the express

1  purpose of "preserving and developing recreational uses" in the "Oceano Dunes area" of

2  San Luis Obispo County.  As described by FWS itself, the dunes area covers not only

3  Oceano Dunes SVRA but also the dune complex that runs for 18 miles along the central

4  coast and includes the area encompassed within Guadalupe-Nipomo Dunes National

5  Wildlife Refuge.  The purposes of the Act at issue, 16 U.S.C.  § 668dd et seq., include the

6  conservation and management of wildlife *and recreational* interests, such as wildlife

7  observation, photography, fishing, hiking, exploring, and education, and active public

8  participation in the development of management and conservation plans for the Refuge.

9  Preserving these interests in the area that includes the Refuge at issue are germane to the

10  purpose of Friends.

11        8.  Friends' members live near, use, recreate, visit and personally enjoy the

12  aesthetic, wildlife and recreational resources of the Refuge.

13        9.  One such person is Friends' member (and Board of Directors' member) and

14  individual Plaintiff WILLIAM KNOFF ("KNOFF").  On numerous occasions since the

15  creation of the Refuge, and as recently as June 2014, Friends' member and Plaintiff

16  KNOFF visited the Refuge for the purpose of hiking, exploring and observing wildlife.

17  KNOFF intends to visit the Refuge again in the coming months and years to engage in

18  hiking, and exploring wildlife, all priority interests under the Act.  He has plans to visit the

19  Refuge again in November 2015.

20        10. In addition, based on the experiences and activities of Friends, its members and

21  KNOFF at the adjacent state-owned Oceano Dunes SVRA (including serving on

22  government-sponsored and -sanctioned technical committees evaluating conflicts between

23  recreation and protected species), Friends' members, including its President, Mr. Jim Suty,

24  and KNOFF, a Friends' Board member, have developed expertise in how best to manage

25  potential and actual conflicts between wildlife conservation and human recreational

26  activities, which accords with one of the purposes of the Act to ensure the compatibility of

27  conservation and wildlife-dependent recreation as part of the mission of the refuges, as set

28

forth in 16 U.S.C. § 668dd(a)(2),(3),(4) and as a required part of each CCP, as set forth in 16 U.S.C. § 668dd(e).  The CCP creation and development process implements the mandate of the Act to provide an opportunity for active participation in wildlife refuge management by the public and affected persons.  The Act expressly requires FWS to provide an opportunity to "States, owners of adjacent or potentially affected land, local governments, *and any other affected persons*," and the public to share their expertise and provide comment on a proposed CCP.  Persons under the Act includes not-for-profit corporations like Friends and individuals like KNOFF.  FWS' failure to prepare a CCP for the Refuge for more than 15 years and failure to provide an opportunity for the public and affected persons to provide input on the plan and management practices for the Refuge have caused harm to Friends, its members and KNOFF, as a member of Friends and individually, because they have not been afforded an opportunity to share their experience and expertise relevant to the preparation of a CCP that includes best management practices for balancing wildlife conservation and priority recreational interests.  As an example, the program for protecting sensitive species implemented by the California Department of Parks and Recreation (with the active assistance of Friends, its members and KNOFF) at the adjacent state recreation area is an order of magnitude more successful in protecting such species than any effort currently undertaken by FWS at the Refuge. This is true even though between 1.5 and 2 million people visit the state facility each year and only a tiny fraction of that number visit the Refuge.  Friends and its members have grave concerns about the very poor success rate that FWS has had for the past decade in implementing a predator management plan at the Refuge.  With respect to the threatened western snowy plover (shorebird) in particular, FWS repeatedly allows numerous birds to be killed by predators each year due to a wholly inadequate and misguided predator management plan. The promulgation of the mandated CCP, with mandatory input from the public and affected persons, and with required coordination with the California Department of Parks and Recreation, would help alleviate such harm.

11.  The wildlife, conservation, aesthetic, recreational and public participation interests of Plaintiff Friends, its members and KNOFF, as a member and individually, are being and will continue to be adversely affected and irreparably injured by the FWS' failure to perform its mandatory duty to prepare a CCP for the Refuge, and to invite the public and Friends' members to participate in that process.

12.  The injuries described above are actual, concrete injuries suffered by Friends, its members and KNOFF, as a member of Friends and individually. These injuries are caused by the actions and omissions of Defendants and would be redressed by the relief sought herein. Plaintiffs have no other adequate remedy at law.   Therefore, Plaintiffs Friends, for itself and its members, and KNOFF, as a member of Friends and individually, bring this action.

13.  Defendants DEPARTMENT OF THE INTERIOR ("Interior") and the FWS are the federal agencies responsible for the administration of the National Wildlife Refuge System (System) under 16 U.S.C.  § 668dd(a).  Defendant FWS is the federal agency within Interior that has been delegated responsibility for administering the System.

14. Defendant SALLY JEWELL is the Secretary of the U.S. Department of the Interior ("Secretary") and is the federal official vested with responsibility by the Act for making decisions required by the Act.  Pursuant to 16 U.S.C.  § 668dd(e)(1) and (2), the Secretary has a mandatory duty to propose a CCP for the Refuge, publish a notice in the Federal Register on each proposed CCP to provide opportunity for public comment, issue a final CCP, and revise CCPs not less frequently than 15 years after the date of issuance of a CCP.  Pursuant to 16 U.S.C. § 668dd(e)(1)(B) and (a)(6), the Secretary was required to issue a final CCP for the Refuge no later than August 1, 2015.  The Secretary is the official ultimately responsible for management of the Refuge and for compliance with all laws applicable to the Refuge, including the Act and the APA. The Secretary is sued in her official capacity.

15. Defendant DANIEL ASHE is the Director of the FWS.   The Director oversees the implementation of the Act on a daily basis.  Pursuant to 16 U.S.C. § 668dd(e)(2), the Director shall, in developing a CCP, identify and describe:  "(A) the purposes of each refuge comprising the planning unit; (B) the distribution, migration patterns, and abundance of fish, wildlife, and plant populations and related habitats within the planning unit; (C) the archaeological and cultural values of the planning unit;  (D) such areas within the planning unit that are suitable for use as administrative sites or visitor facilities;  (E) significant problems that may adversely affect the populations and habitats of fish, wildlife, and plants within the planning unit and the actions necessary to correct or mitigate such problems; and (F) opportunities for compatible wildlife-dependent recreational uses."  The Director is sued in his official capacity.

16.  Defendant MICHAEL BRADY is an FWS employee and the de facto, acting or project Manager of the Guadalupe-Nipomo Dunes National Wildlife Refuge at issue here.  He is sued in his official capacity.

17.  Each and all of the Defendants are responsible for the violations of law set forth in this complaint.

**Background**

18. The Department of the Interior, acting through FWS, manages the National Wildlife Refuge System (System) pursuant to the National Wildlife Refuge System Administration Act of 1966, Pub. L. No. 89-669, 80 Stat. 927, as amended by the National Wildlife Refuge System Improvement Act, Pub L. No. 105-57, 111 Stat. 1252 (1997) (codified at 16 U.S.C. §§ 668dd-668ee).

19.  Section 668dd(a)(1) mandates that the System "shall be administered by the Secretary through the United States Fish and Wildlife Service."

20.  Section 668dd (a)(4)(B) and (H) provides that the mission and purpose of the System is to conserve and manage the refuges for the benefit of present and future

generations of Americans and "recognize compatible wildlife-dependent *recreational* uses as the priority general public uses of the System through which the American public can develop an appreciation for fish and wildlife."

21.  Section 668dd(a)(3)(B) states the policy of the United States that each refuge shall be managed to fulfill the mission of the system and that "compatible wildlife-dependent *recreation* is a legitimate and appropriate general public use of the System."

22.  The Guadalupe-Nipomo Dunes National Wildlife Refuge (Refuge) is part of this National Wildlife Refuge System.  Located near Guadalupe, California, the Refuge is bordered by Oceano Dunes State Vehicular Recreation Area (SVRA) to the north, which is owned and managed by the State of California Department of Parks and Recreation.

23. The FWS established the Refuge in 2000 and it presently consists of more than 2,500 acres along the ocean and extending inland.  The Refuge consists of fore dune, open sand, back dune, dune swale, coastal dune scrub and wetlands.  More than 120 species of sensitive plants and animals are present within the Refuge.

24.  The objectives of the Refuge include protecting, managing and restoring coastal habitats and wetlands as well as threatened, endangered and sensitive species. Objectives also include providing educational and recreational activities including wildlife observation, photography, fishing, hiking, exploring, and education.

25. Sections 668dd(a)(4)(C), (E), (M) direct that the Secretary "shall" (1) "complement efforts of States and other Federal agencies to conserve fish and wildlife and their habitats;" (2) "ensure effective coordination, interaction, and cooperation with owners of land adjoining refuges and the fish and wildlife agency of the States in which the units of the System are located;" and (3) "ensure timely and effective cooperation and collaboration with Federal agencies and State fish and wildlife agencies during the course of acquiring and managing refuges." The Act therefore inspirits a "cooperative federalism," calling for, at a minimum, state involvement and participation in the management of each Refuge as that system affects surrounding state ecosystems.  To this

1   end, FWS has adopted a "good neighbor policy" between the Federal Government and the

2   States with respect to the management of wildlife refuges.  Further, the legislative history

3   of the Act reveals that Congress expected "the FWS to be energetic and creative in seeking

4   . . . partnerships with the States, local communities *and private and nonprofit groups*."

5   H.R. Rep. No. 105-106, at 6.

6          26. The Act directs the Secretary to "issue a final conservation plan" for each refuge

7   "consistent with the provisions of this Act and, to the extent practicable, consistent with

8   the fish and wildlife conservation plans of the State in which the refuge is located."  16

9   U.S.C. § 668dd(e)(1)(A)(iii).   Therefore, the FWS fulfills its mandate of cooperation with

10  State agencies and adjacent landowners in large part through the creation and adoption of

11  individual management and conservation plans for each Refuge called "comprehensive

12  conservation plans," or CCPs.  Accordingly, § 668dd(e)(1)(A) requires the Secretary to

13  propose a CCP for each Refuge, publish a notice of opportunity for public comments on

14  the CCP in the Federal Register, and issue a final CCP within 15 years after the date of

15  enactment of the National Wildlife Refuge System Improvement Act of 1997 [enacted

16  October 9, 1997]. (§ 668dd(e)(1)(B) ["The Secretary shall prepare a comprehensive

17  conservation plan under this subsection for each refuge within 15 years after October 9,

18  1997."].)  For each Refuge that was established after the Act, the FWS has stated that the

19  deadline differs, so that it must issue a CCP within 15 years after the establishment of that

20  Refuge. 65 Fed.Reg. 33892 (May 25, 2000) ("For refuges established after passage of this

21  Act, we will prepare CCPs when we staff the refuge and acquire a land base sufficient to

22  achieve refuge purposes, but no later than 15 years after establishment of the refuge.").

23         27.  Hence, here, the Refuge was established on August 1, 2000, and therefore the

24  Act and FWS' own deadline mandated that FWS create and adopt a final CCP for the

25  Refuge no later than August 1, 2015.

26         28.  Specifically, § 668dd(e)(1) mandates that the Secretary prepare, allow for

27  public review, and issue a final CCP as follows:

28

1  "(e) Refuge conservation planning program for non-Alaskan refuge lands.

2   (1) (A) Except with respect to refuge lands in Alaska . . ., the Secretary shall--

3     (i) propose a comprehensive conservation plan for each refuge or related complex of

4  refuges (referred to in this subsection as a "planning unit") in the System;

5     (ii) publish a notice of opportunity for public comment in the Federal Register on

6  each proposed conservation plan;

7     (iii) issue a final conservation plan for each planning unit consistent with the

8  provisions of this Act and, to the extent practicable, consistent with fish and wildlife

9  conservation plans of the State in which the refuge is located; and

10    (iv) not less frequently than 15 years after the date of issuance of a conservation plan

11  under clause (iii) and every 15 years thereafter, revise the conservation plan as may be

12  necessary.

13    (B) *The Secretary shall prepare a comprehensive conservation plan under this*

14  *subsection for each refuge within 15 years after the date of enactment of the National*

15  *Wildlife Refuge System Improvement Act of 1997 [enacted October 9, 1997].*

16    (C) The Secretary shall manage each refuge or planning unit under plans in effect on

17  October 9, 1997, to the extent such plans are consistent with this Act, until such plans are

18  revised or superseded by new comprehensive conservation plans issued under this

19  subsection.

20    (D) Uses or activities consistent with this Act may occur on any refuge or planning unit

21  before existing plans are revised or new comprehensive conservation plans are issued

22  under this subsection.

23    (E) Upon completion of a comprehensive conservation plan under this subsection for a

24  refuge or planning unit, the Secretary shall manage the refuge or planning unit in a manner

25  consistent with the plan and shall revise the plan at any time if the Secretary determines

26  that conditions that affect the refuge or planning unit have changed significantly."

27  (Emphasis added.)

28

1    29.  In addition, § 668dd(e)(2)-(4) mandate that FWS accomplish the following:

2  "(2) In developing each comprehensive conservation plan under this subsection for a

3  planning unit, the Secretary, acting through the Director, shall identify and describe--

4      (A) the purposes of each refuge comprising the planning unit;

5      (B) the distribution, migration patterns, and abundance of fish, wildlife, and plant

6  populations and related habitats within the planning unit;

7      (C) the archaeological and cultural values of the planning unit;

8      (D) such areas within the planning unit that are suitable for use as administrative sites

9  or visitor facilities;

10      (E) significant problems that may adversely affect the populations and habitats of fish,

11  wildlife, and plants within the planning unit and the actions necessary to correct or

12  mitigate such problems; and

13      (F) opportunities for compatible wildlife-dependent recreational uses.

14   (3) In preparing each comprehensive conservation plan under this subsection, and any

15  revision to such a plan, the Secretary, acting through the Director, shall, to the maximum

16  extent practicable and consistent with this Act--

17      (A) consult with adjoining Federal, State, local, and private landowners and

18  affected State conservation agencies; and

19      (B) coordinate the development of the conservation plan or revision with relevant State

20  conservation plans for fish and wildlife and their habitats.

21   (4) (A) In accordance with subparagraph (B), the Secretary shall develop and implement

22  a process to ensure an opportunity for active public involvement in the preparation and

23  revision of comprehensive conservation plans under this subsection. At a minimum, the

24  Secretary shall require that publication of any final plan shall include a summary of the

25  comments made by States, owners of adjacent or potentially affected land, local

26  governments, and any other affected persons, and a statement of the disposition of

27  concerns expressed in those comments.

28

(B) Prior to the adoption of each comprehensive conservation plan under this subsection, the Secretary shall issue public notice of the draft proposed plan, make copies of the plan available at the affected field and regional offices of the United States Fish and Wildlife Service, and provide opportunity for public comment."

30. The Refuge was established on August 1, 2000, and therefore, the FWS has had more than **15 years** to complete this statutorily-mandated task. The Defendants have not only failed to issue a final CCP for the Refuge within the statutory and regulatory deadlines, they also have yet even to propose one.

## Claims

### First Claim

### Violation of the National Wildlife Refuge System Administration Act, As Amended

31. Plaintiffs hereby incorporate by reference paragraphs 1 through 30 as if set forth herein.

32. The National Wildlife Refuge System Administration Act, 16 U.S.C. § 668dd et seq, as amended, required Defendants to propose a CCP for the Refuge, publish a notice of opportunity for public comments in the Federal Register for the proposed CCP for the Refuge and issue a final CCP "within 15 years after the date of enactment of the National Wildlife Refuge System Improvement Act of 1997 [enacted October 9, 1997]."  For each Refuge that was established after the Act, including this Refuge, FWS has stated that the deadline differs, so that it must issue a CCP within 15 years after the establishment of that Refuge. 65 Fed.Reg. 33892 (May 25, 2000).  Since the Refuge was established on August 1, 2000, and 15 years after that date is August 1, 2015, and FWS has failed to adopt a final CCP for the Refuge, FWS is in violation of the Act and the FWS' corresponding regulations and policies requiring a CCP "within 15 years after the establishment of that Refuge."

33.  The Defendants failed to propose a CCP for the Refuge, publish a notice of opportunity for public comments in the Federal Register for the proposed CCP for the Refuge or issue a final CCP which is a violation of the Act and the FWS regulations and policies.

34.  Plaintiffs are entitled to the relief requested in the Prayer section below.

**Second Claim**

**Violation of the APA**

35. Plaintiffs hereby incorporate by reference paragraphs 1 through 34 as if set forth herein.

36.  The APA provides for judicial review of final agency action by persons "adversely affected or aggrieved" by such action.  5 U.S.C. § 702.  Plaintiffs Friends, its members and William Knoff, as a member of Friends and individually, are adversely affected and aggrieved by the failure to and/or delay in preparing a CCP and seeking input.

37.  The APA provides that courts shall compel agency action unlawfully withheld, or unreasonably delayed.  5 U.S.C. § 706(1); 5 U.S.C. § 551(13).  The actions reviewable under the APA include "preliminary, procedural, or intermediate agency action or ruling . . . on the review of the final agency action." 5 U.S.C. § 704.  Under the APA, a court "shall … (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law… ."  5 U.S.C. § 706.  Courts may review a final agency action, 5 U.S.C. § 704, and "agency action" includes a "failure to act," such as the failures to act at issue in this case. 5 U.S.C. § 551(13) ["agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act].

38. Defendants violated § 668dd(a), (d) and (e), and the FWS corresponding regulations and policies a identified in 65 Fed.Reg. 33892 (May 25, 2000), by failing to

1  fulfill its mandatory duty to propose a CCP for the Refuge, publish a notice of opportunity

2  for public comments in the Federal Register for the proposed CCP for the Refuge and issue

3  a final CCP within the statutory and regulatory deadline.

4      39.   The failure to issue a final CCP for the Refuge in a timely manner is a final

5  agency decision under 5 U.S.C. § 704 and 5 U.S.C. § 551(13) and is reviewable under the

6  APA, 5 U.S.C. §§ 701-706.

7      40.   When Congress by organic statute sets a specific deadline for agency action,

8  neither the agency nor any court has discretion.  The agency must act by the deadline.  If it

9  withholds such timely action, a reviewing court must compel the action unlawfully

10  withheld.

11      41. Defendants' final agency actions described herein violate 5 U.S.C. § 706 in that

12  Defendants unlawfully withheld, unreasonably delayed, or failed to prepare a CCP for the

13  Refuge and acted arbitrarily, capriciously, abused their discretion, and failed to act in

14  accordance with law by failing to perform a mandatory duty.  Defendants' refusal to act to

15  meet the statutory obligations outlined above is arbitrary, capricious, and not in accordance

16  with the law, and entitles Plaintiff to the relief requested in the Prayer section below,

17  including the Court compelling the agency to perform as directed by Congress.

18      42.   Plaintiffs are entitled to the relief requested in the Prayer section below.

19

20  **Prayer**

21  WHEREFORE, Plaintiffs Friends, for itself and for its members, and William Knoff, as a

22  member of Friends and individually, respectfully request that this Court enter judgment

23  providing the following relief:

24      (1)   Declare that Defendants have violated, and are violating, the Act and

25  associated FWS regulations and policies by failing to propose a CCP for Nipomo Dunes

26  Refuge, publish a notice of opportunity for public comments in the Federal Register for the

27

28

proposed CCP for Nipomo Dunes Refuge and issue a final CCP for Nipomo Dunes Refuge within the statutory deadline;

(2) Declare that Defendants have violated, and are violating, the APA by failing to propose a CCP for Nipomo Dunes Refuge, publish a notice of opportunity for public comments in the Federal Register for the proposed CCP for Nipomo Dunes Refuge and issue a final CCP for Nipomo Dunes Refuge within the statutory and regulatory deadline as required by the Act and by FWS itself;

(3) Declare that Defendants have unlawfully withheld or unreasonably delayed the issuance of the final CCP for Nipomo Dunes Refuge and acted arbitrarily, capriciously, abused their discretion, and failed to act in accordance with law;

(4) Order Defendants to comply immediately and carry out their mandated duties under the Act and the APA (in accordance with the Act, the APA and injunctive relief sought herein by this Complaint);

(5) Establish a deadline, with milestones, for Defendants immediately to carry out the above mandated duties and to comply with the order of this Court and retain jurisdiction over this matter until such time as Defendants have done so (in accordance with the Act, the APA and injunctive relief sought herein by this Complaint).

(6) Award plaintiff its costs and attorneys' fees in this action, as permitted by law, provided in the Equal Access to Justice Act, 28 U.S.C. § 2412, or allowed under other applicable statutory or common law; and

1    (7)   Grant plaintiff such other and further relief as this Court deems to be

2  just, proper and equitable.

3         Dated: September 16, 2015

4

5                              Respectfully submitted,

6                       /s/_Thomas D. Roth

7  ⎯⎯

8                       Thomas D. Roth
                        Law Offices of Thomas D. Roth
                        One Market, Spear Tower, Suite 3600
9                       San Francisco, California 94105
                        (415) 293-7684

10                      Attorneys for Plaintiffs
                        Friends of Oceano Dunes, Inc. and William
11                      Knoff, as a member of Friends and
                        individually

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28